UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

UNIVERSAL TOWERS CONSTRUCTION,
INC.,

CASE NO. 6:20-bk-03799-KSJ
Chapter 11

   Debtor.

**Hearing set for December 1, 2020,
at 9:30 a.m. by Zoom and CourtCall**

_____/

**DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER
(1) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S
HOTEL PROPERTY, (2) SCHEDULING A FINAL SALE HEARING,
(3) APPROVING THE FORM AND MANNER OF NOTICES,
(4) APPROVING THE SALE OF THE DEBTOR'S HOTEL PROPERTY FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES
AND INTERESTS, (5) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, AND (6) GRANTING RELATED RELIEF**

**(Expedited Hearing Set for December 1, 2020 at 9:30 a.m.)**

UNIVERSAL TOWERS CONSTRUCTION, INC., as Debtor and Debtor-in-possession

(the "Debtor"), by and through its undersigned counsel, hereby moves, pursuant to 11 U.S.C. §§

105, 363 and 365, and Rules 2002, 6004, and 6006, Fed. R. Bankr. P., for (A) the entry of an Order

in substantially the form attached hereto as **Exhibit A** (the "*Bid Procedures Order*"): (1) approving

bidding procedures and bidder protections for the sale the Debtor's interest in the hotel real and

personal property located at 7800 Universal Boulevard, Orlando, Florida 32819, doing business as

the Crowne Plaza Universal Orlando Hotel (the "*Hotel*"), (2) scheduling a final sale hearing ("*Sale*

*Hearing*"); and (3) approving the form and manner of notices of the Sale Hearing and for the

assumption and assignment of executory contracts and unexpired leases; (4) authorizing the sale

of the Hotel, free and clear of liens, claims, interests and encumbrances in connection therewith,

to the successful bidder, (5) approving assumption and assignment procedures, and (6) granting

certain related relief as more fully described herein. In support of this Motion, the Debtor states as follows:

## Background

1.      Debtor is a Florida corporation and the owner and operator of the Hotel.

2.      On July 3, 2020 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("*Bankruptcy Code*").

3.      The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      No trustee or examiner has been appointed in the Debtor's Chapter 11 case, and no committees have been appointed or designated.

5.      On October 30, 2020, Debtor filed its Plan of Liquidation (Doc. No. 166) ("*Plan*") and Disclosure Statement (Doc. No. 165) ("*Disclosure Statement*").  As set forth in the Plan, the Debtor contemplates the sale of the Hotel as the means of implementation of the Plan.

## The Hotel and the Pandemic

6.      The Hotel is a 400-room hotel located at 7800 Universal Boulevard in the heart of Orlando's tourism district, and is just minutes from Universal Studios and many other Orlando area attractions.  The Hotel is a full service hotel, offering multiple food and dining choices, convention and meeting room availability, a luxurious swimming pool and patio, an on-site spa, recreational opportunities, business services, and fitness/wellness amenities among many others. The Debtor owns the fee simple real estate on which the Hotel is situated, and all personal property, fixtures, furniture, and equipment located on the Hotel property (other than a few leased items).

7.      The Hotel is managed by Aimbridge Hospitality ("*Aimbridge*") following its merger with Interstate Hotels & Resorts, Inc.  Aimbridge is a global leader in third-party hotel management.  Debtor and Aimbridge are parties to that certain *Management Agreement* dated

January 15, 2001, as amended by that certain *First Amendment to Hotel Management Agreement* dated November 19, 2012 (the "*Management Agreement*").  Debtor is also a Crowne Plaza licensee and is party to a license agreement with Holiday Hospitality Franchising, Inc. ("*HHF*") known as the *Crowne Plaza New Development Agreement* (the "*Franchise Agreement*").

8.      The Hotel has nearly two decades of extremely strong performance; the Hotel has rarely, if ever, lost money in a given month, let alone in an entire year, until March 2020.  On March 12, 2020, within days before Governor DeSantis declared a state of emergency in Florida, the Debtor obtained an appraisal for the Hotel indicating a fair-market, as-is value of $41.9 million. The pandemic is the only reason the Hotel's performance has suffered in recent months.

9.      Luckily, it appears the cavalry is on its way: three vaccine manufacturers have recently announced vaccine trial results demonstrating that each vaccine is at least 90% effect, and Pfizer applied for emergency FDA approval of its 95% effective vaccine on November 20, 2020. Many experts believe that wide-scale distribution of these vaccines could begin as early as spring 2021.

10.     Additionally, Debtor believes that it may soon have additional cash available for operations upon the sale of the Brazilian cattle ranch and cattle owned by UTB.  As set forth in the Disclosure Statement, the Debtor is the holder of the UTB Notes (in the aggregate original principal amount of $2,070,000) and the UTB Investment (49% of the equity in UTB, and approximately $4.0 million of initial paid-in capital).[1]  The judicial administrator for UTB is in the process of selling the UTB cattle and real estate, and he has advised the Debtor that approximately

---

[1] The UTB Notes and UTB Investment are defined in the Disclosure Statement and Plan.  Unless otherwise defined herein, capitalized terms shall have the definition ascribed to them in the Bid Procedures Order and the Bid Procedures.

90% of the cattle are expected to be sold by year-end, and the cattle ranch is anticipated to be sold in the spring of 2021.

## The Proposed Marketing and Sale Process

11.     The Debtor seeks approval to embark on a 60-day marketing process to attempt to obtain a stalking horse bidder for a live auction to occur within 45 days after the initial marketing period, while reserving the Debtor's right to pull the Hotel from the market in the event the stalking horse offers submitted are incommensurate with the intrinsic value of the Hotel.  This is not a fire sale.  If the Debtor, in its business judgment, determines that pulling the Hotel from the market because the price buyers are willing to pay is too low for such a historically high-performing hotel, Debtor will stop the sale process and pivot to an alternative restructuring or liquidation plan.

12.     Since the filing of this Chapter 11 case, the Debtor has been in discussions with a number of parties who have expressed an interest in engaging in a transaction with the Debtor and/or acquiring the Hotel. Despite such discussions, at this time, the Debtor has not yet finalized the terms of a transaction, including specifically a transaction that would enable the Debtor to present a stalking horse buyer to the Bankruptcy Court for approval in connection with the proposed bidding and sale procedures contained herein.

13.     Debtor seeks to employ Fisher Auction Company ("*Auctioneer*") as its auctioneer and co-broker and Avison Young ("*AY*") as its co-broker to market the Hotel.  These experienced hospitality brokers will use their best efforts to solicit and obtain an executed stalking horse purchase and sale agreement.  At the end of the 60-day marketing period, the Debtor, in its discretion, may choose to either (i) designate a bid the "*Stalking Horse Bid*" (and such bidder, the "*Stalking Horse Bidder*"), and enter into a Stalking Horse Agreement providing certain bid protections and a break-up fee (as set forth below); (ii) designate more than one Qualified Bidder and proceed to a live auction without a Stalking Horse Bidder; or (iii) reject all bids and cancel the

auction, in which event the Debtor shall pay to Broker/Auctioneer a "No Sale Fee" of $75,000.00. If the Debtor chooses to move forward to a live, online auction, the Auctioneer will conduct the auction within 45 days after the end of the 60-day marketing period or Debtor's identification of a stalking horse bidder, if sooner. Debtor will then present the results of the Auction to the Bankruptcy Court for approval as soon as possible after the Auction at the Sale Hearing.

14.     In the event Debtor chooses not to proceed to a live auction, the Debtor will modify the Plan and propose a feasible alternative for restructuring the Debtor's liabilities or an alternative means of implementation for the plan of liquidation. The Debtor anticipates that the payments received from the UTB Notes and UTB Investment will provide sufficient working capital to support the Hotel while the Debtor proposes a modified plan.

## **RELIEF REQUESTED**

15.     Debtor has determined in its business judgment that the marketing and sale process set forth in the Bid Procedures (attached to the Bid Procedures Order as Exhibit 1) (the "*Bid Procedures*"), are in the best interest of the Debtor's estate, and are consistent with the Plan. Accordingly, through this Motion, and pursuant to 11 U.S.C. §§ 105, 363, and 365, the Debtor hereby seeks entry of two orders.

16.     First, after consideration of this Motion at a hearing scheduled for **December 1, 2020, at 9:30 a.m.**, Debtor requests entry of the Bid Procedures Order in substantially in the form attached hereto as **Exhibit A**. The Bid Procedures Order provides for, among other things:

        (a)     approval of the Bid Procedures and authorization for the Debtor to follow the sale and auction procedures for the Sale of the Hotel as set forth in the Bid Procedures;

        (b)     scheduling a hearing (the "*Sale Hearing*") on an expedited basis on or about Wednesday, March 17, 2021 (or as soon as the Court is available after the Auction Date) to consider approval of the sale of the Hotel (the "*Sale*") to the Successful Bidder (as such term is defined in the Bid Procedures), if any;

(c)     authorization and approval of the form and manner of notice of the Sale and Auction ("*Auction Notice*") to be served on parties in interest in the form attached to the Bid Procedures Order as Exhibit 2.

(d)     authorization and approval of (i) the Debtor's proposed procedures for (A) the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder and (B) curing defaults under those executory contracts and unexpired leases; and (ii) notice of assumption and assignment of the executory contracts and unexpired leases and the proposed cure amounts relating thereto (the "*Cure Notice*") in the form attached to the Bid Procedures Order as Exhibit 3; and

(e)     authorization of, but not requiring, the Debtor to enter into a Stalking Horse Agreement and to provide a Stalking Horse Bidder the Break Up Fee.

17.    Second, upon the conclusion of the Sale Hearing, the Debtor requests the entry of an Order (a) authorizing the sale of the Hotel to the Successful Bidder or the Back-Up Bidder, as the case may be, free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change of control provisions, all rights to object or consent to the effectiveness of the transfer of the Hotel to the Successful Bidder to be excused from accepting performance by the Successful Bidder or performing for the benefit of the Successful Bidder under any assumed agreement and all rights at law or in equity, and (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases intended to be acquired by the Successful Bidder. All liens, security interests, and encumbrances shall attach to the Sale proceeds to the same extent, priority, and validity existing as of the date of the Sale.

## THE PROPOSED SALE, NOTICE, BIDDING AND OTHER PROCEDURES

**A.    Notice and Other Procedures.**

18.    The Debtor requests the approval of the following notice and other procedures:

6

(a)    Date, Time and Place of the Sale Hearing. The Debtor proposes that the Sale Hearing be held in the United States Bankruptcy Court for the Middle District of Florida (Orlando) on March 17, 2021, or such other date and time that the Court may direct, but in any event as soon as possible after the Auction. The Sale Hearing may be adjourned from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.  Debtor may request an earlier Sale Hearing in the event the Auction occurs more than three (3) business days before the scheduled Sale Hearing.

(b)    Auction Notice. At least twenty (20) days prior to the Auction, the Auction Notice shall be served on (i) the Stalking Horse Bidder, if any, and its counsel, (ii) any party who, in the past six months, expressed in writing to the Debtor an interest in acquiring the Hotel or any party who the Debtor, upon consultation with the Auctioneer, believes may otherwise have an interest in acquiring the Hotel, (iii) any party, or its counsel, with a lien or security interest of record on, or other written asserted interest in, the Hotel real or personal property, (iv) the U.S. Trustee, (v) and all parties who have filed a notice of appearance and request for service of documents filed in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (collectively referred to herein as the "*Auction Notice Parties*").

(c)    Information Provided to Interested Parties. The Auction Notice will include (i) a description of the Hotel to be sold, (ii) the date, time and location of the Auction, (iii) a deadline for submitting bids on the Hotel, (iv) the date of the Sale Hearing, and (v) the manner and deadline for any objections to the sale of the Hotel, the determination of which Qualified Bid is the Successful Bid, or any other aspects of the Auction.  If applicable, the Debtor will include in the Auction Notice the identity of the Stalking Horse Bidder and the price agreed to by the Stalking Horse Bidder.  The Auction Notice will also include the method by which any Auction Notice Parties may obtain the Bid Procedures, the Bid Procedures Order, and any other information related to the Auction.

(d)    Publication Notice. Concurrently with this Procedures Motion, the Debtor will be filing its Application to Employ Auctioneer (the "*Auctioneer Motion*") seeking Court approval of the Debtor's retention of the Auctioneer for the marketing and sale of the Hotel pursuant to the terms outlined in this Motion. As more fully discussed in the Auctioneer Motion, the Debtor expects that the Auctioneer, in conjunction with AY, will solicit prospective purchasers and act as a liaison between interested parties and the Debtor. The Auctioneer will also coordinate all due diligence and information requests from the interested parties. Additionally, the Auctioneer will be responsible for advertising the sale and/or auction of the Hotel through print media such as the Wall Street Journal and the Orlando Sentinel, and over the internet via email blasts to all appropriate addresses available through the Auctioneer's email database.

## B.    The Proposed Bid Procedures.

19.    The Debtor crafted the Bid Procedures to permit an expedited marketing and sale process, while simultaneously fostering an orderly and fair sale process that will confirm that the Successful Bid is the best and highest price for the Hotel.

20.     The Bid Procedures are set forth in detail on Exhibit 1 to the Bidding Procedures Order and are not restated herein, but are incorporated herein by reference. The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the sale process, the availability of due diligence materials to prospective bidders, the deadline and requirements for submitting a Stalking Horse Bid, the terms and conditions of the breakup fee payable to the Stalking Horse Bidder, the method and criteria for bidders to become "qualified" to participate in the Auction, the manner in which bids will be negotiated, clarified, and improved, and the criteria for selecting the Successful Bidder. The Debtor will consider all proposals that are deemed qualified in accordance with the Bidding Procedures.

**C.      Proposed Stalking Horse Protections and Break Up Fee.**

21.     The Debtor expects that a Stalking Horse Bidder will likely require a break-up fee in the event a transaction with a different bidder is consummated. To help ensure that a potential buyer is willing to be the Stalking Horse Bidder for the Hotel, thereby establishing a floor for a subsequent Auction, the Debtor seeks authority to provide a break-up fee in the amount of up to 1% of the Stalking Horse Bid price (the "*Break Up Fee*").  As set forth in the Bid Procedures, the Initial Overbid will be the Stalking Horse Bid plus the Break Up Fee amount, so the net sale proceeds to the Debtor will not be less than the Stalking Horse Bid.  Debtor requests the Court approve the Break Up Fee now, as part of the Bid Procedures, to establish a uniform fee amount, which will set bidder expectations and encourage participation in the process.

**D.      Proposed Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases.**

22.     The following procedures, which may be modified as necessary by further Order of the Court, shall govern the assumption and assignment of the certain executory contracts and unexpired leases in connection with the sale of the Hotel to the Successful Bidder:

(a)    Cure Notice.  Not less than 20 days prior to the Sale Hearing, the Debtor shall file with this Court and shall serve a Cure Notice, substantially in the form attached as Exhibit 3 to the Bid Procedures Order, by overnight delivery service upon each non-debtor counterparty to an executory contract or unexpired leases with the Debtor (each a "*Non-Debtor Counterparty*") that the Debtor intends to assume and assign to the Successful Bidder (the "*Designated Contracts*"). The Debtor shall attach to the Cure Notice a list of identifying Non-Debtor Counterparties to the Designated Contracts and the corresponding Cure Costs under the Designated Contracts as of the Closing Date (a date to be set) and any additional terms and conditions of assumption or assignment.

(b)    Objections to Cure Costs.  Objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of the Designated Contracts, including, but not limited to, objections relating to adequate protection of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Notice Parties so as to be received no later than fourteen (14) days after service of an Assignment Notice (the "*Designation and Cure Objection Deadline*"). Where a Non-Debtor Counterparty to a Designated Contract files an objection meeting the requirements of this subsection, objecting to the assumption by the Debtors and assignment to the Purchaser of such Designated Contract (the "*Disputed Designation*") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "*Disputed Cure Costs*"), the Debtor, Successful Bidder, and Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the Debtor, Non-Debtor Counterparty, and Successful Bidder determine that the objection cannot be resolved without judicial intervention, then the determination will be determined by the Court at the Sale Hearing or such earlier date as may be affixed by the Court. If the Court determines at the Sale Hearing that the Designated Contract may not be assumed and assigned, then such executory contract or unexpired lease shall no longer be considered a Designated Contract; *provided*, however, that after such determination is made by the Court, the Debtor may re-designate such Designated Contract and propose a new Cure Cost in accordance with these Contract Procedures, including providing the applicable Non-Debtor Counterparty with the Assignment Notice setting forth the re-designation and proposed Cure Cost of the Designated Contract.

(c)    Failure to Object.  Any Non-Debtor Counterparty to a Designated Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Designated Contract by the Designation and Cure Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Contracts, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate, or the Successful Bidder.

If the Non-Debtor Counterparty to a Designated Contract fails to timely object to the assumption and assignment of a Designated Contract or the proposed Cure Costs relating thereto by the Designation and Cure Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Designated Contract shall be deemed to be assumed by the Debtor and assigned to the Successful

Bidder and the proposed Cure Cost related to such Designated Contract shall be established and approved in all respects, subject to (e) below.

(d)    <u>Court Approval</u>.    The Debtor's decision to assume and assign the Designated Contracts is subject to Court approval and consummation of a Sale. The Debtor shall be deemed to have assumed and assigned each of the Designated Contracts as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Contracts shall neither be assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtor under the Bankruptcy Code.

**THE COURT SHOULD APPROVE THE BID PROCEDURES<br>AND ENTER THE BID PROCEDURES ORDER**

**A.    The Bid Procedures are in the best interest of the estate and should be approved.**

23.    Bidding procedures should be approved when they provide a benefit to the debtor's estate by maximizing the value of the debtor's assets. *See In re Edwards*, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"). To that end, courts uniformly recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm. of Subordinated Bondholders v.*

24.    Approval of the Bid Procedures will allow the Debtor to act quickly on market interest in the Hotel while also providing interested parties sufficient notice of the proposed sales

10

to submit competing bids, object to the sale, or otherwise be heard as appropriate, as required by Bankruptcy Rules 6004 and 2002, and discussed in more detail below. The Bid Procedures also provide the Debtor discretion to pull the Hotel from the market in the event the Stalking Horse Bids received are incommensurate with the intrinsic value of the Hotel, or if there are further developments that warrant cancellation of the sale process.

25.    The proposed Bid Procedures will ensure that the Debtor's estate receives the greatest benefit available from the sale of the Hotel. The Bid Procedures are designed to attract the maximum number of bidders while allowing the Debtor the flexibility to select the bid that optimizes the value to the Debtor's estate from the sale. Further, the Bid Procedures are fair and open and do not unfairly favor a Stalking Horse or any other potential purchaser of the Hotel. Finally, the Bid Procedures, when combined with the extensive marketing conducted by the Auctioneer and Broker, set out a time frame that will allow potential purchasers sufficient time to conduct due diligence, arrange financing, and construct and submit informed competing bids, while still providing for the expeditious sale of the Hotel. Based upon the foregoing, the Debtor submits that the Bid Procedures will help ensure that the highest and best bids are received for the Hotel, thereby optimizing the value of the Debtor's estate, and accordingly warrant Court approval.

**B.**    **The Debtor Should Be Granted the Authority Pay the Break Up Fee to a Stalking Horse Bidder.**

26.    The Debtor submits that entering into a Stalking Horse Agreement furthers the purpose of the Auction by ensuring a sale to a contractually committed Stalking Horse purchaser at a price the Debtor believes is fair, while also providing the Debtor a chance to enhance the price through an auction process. Accordingly, the Debtor requests authority, in the exercise of its business judgment, to offer any Stalking Horse Bidder a Break Up Fee in an amount no greater than 1% of the Stalking Horse Bid price.

27.    The Debtor will exercise prudent business judgment before offering or entering into a Stalking Horse Agreement and will only do so if such agreement, in the Debtor's reasonable business judgment, will likely result in the realization of greater value for the Debtor, its estate, and its creditors. The Debtor's ability to offer potential purchasers the Break Up Fee will likely benefit its estate and creditors as, absent such an incentive, potential purchasers may not be sufficiently induced to submit or increase purchase offers prior to the Auction. Absent a floor, the Auction could produce offers that substantially undervalue the Debtor's Hotel. Not only may entry into a Stalking Horse Agreement prevent such undervaluation, a Stalking Horse Agreement will establish a higher floor for further offers. Thus, even if a Stalking Horse entitled to a Break Up Fee is not the Successful Bidder, the Debtor will have benefited from the higher floor established by the Stalking Horse.

28.    Bidding incentives encourage a potential purchaser to invest the requisite time, money and effort to negotiate with the Debtor and perform the necessary due diligence attendant to the acquisition of the Hotel, despite the inherent risks and uncertainties of the chapter 11 process. Historically, bankruptcy courts have approved bidding incentives similar to the Break Up Fee, under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., In re 995 Fifth Ave. Assocs., LP.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal quotation marks and citation omitted).

29.    The Debtor's election to offer a Break Up Fee satisfies the "business judgment rule" because the Break-Up Fee will encourage competitive bidding and ultimately result in a benefit to

the Debtor's estate. The proposed Break Up Fee is fair and reasonable in amount, and is reasonably intended to compensate for the risk to the purchaser of being used as a Stalking Horse Bidder. Moreover, the Break Up Fee will only be paid for the sale of the Hotel that solicits a higher and better bid than the Stalking Horse Bid, and ultimately leads to a closing of a sale of the Hotel that results in a greater recovery to the Debtor's estate.

30.     Bankruptcy courts in this District have approved protections similar to the proposed protections requested herein as reasonable and consistent with the type and range of bidding protection typically approved. See *In re: Clarklift of Orlando, Inc.*, Case No. 6:07-bk-03154-KSJ; see also *In re: Airnet Communication Corporation*, Case No. 6:06-bk-01171-ABB.  This Court has previously approved in advance a Debtor's ability to enter into a Stalking Horse Agreement, subject to notice and opportunity of interested parties to object.  *See, e.g., In re The Vue*, Case No. 6:09-14833-KSJ.  In this case, the Debtor seeks up front authorization to provide the Break Up Fee to a Stalking Horse Bidder whom the Debtor believes, in consultation with the Auctioneer and AY, has made a sufficient Stalking Horse Bid to warrant such Break Up Fee.

**C.     The Proposed Manner of Providing Notice for The Auction and the Sale Hearing Is Reasonable and Should Be Approved.**

31.     Bankruptcy Rule 6004 prescribes the notice that must be given of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code. Pursuant to Bankruptcy Rule 6004(a), notice of a proposed use, sale or lease of property not in the ordinary course of business must satisfy the requirements of Bankruptcy Rule 2002(a)(2), (c)(I), (i) and (k) (as well as section 363(b)(2) of the Bankruptcy Code, which is not applicable here). Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 20 days' notice by mail of: ... (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business ...." Subsections (i)

and (k) of Bankruptcy Rule 2002 require that the same twenty (20) day notice be given to the Committee and the U.S. Trustee.

32.     As described above, the Auction Notice Parties include all of the parties required to be served under the Bankruptcy Rules. In addition, the Debtor proposes providing notice to U.S. Trustee, all parties who have filed a notice of appearance and request for service, and certain parties whose rights may be affected by the sale (such as parties with liens on or other interests in the Hotel to be sold). The Auction Notice Parties will receive at least twenty (20) days' notice of the Auction date, the Sale Hearing, and the terms of the Stalking Horse Bid, if any.

33.     Bankruptcy Rule 6004(c) requires that a motion pursuant to section 363(b) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold." Fed. R. Bankr. P. 6004(c). As noted above, the Auction Notice Parties include holders of liens or other interests in the Hotel. As such, any interest holder in the Hotel will be served with copies of the Auction Notice, which will provide notice of the Auction date and the Sale Hearing, and will provide an opportunity for such parties to obtain the Bid Procedures and the Bid Procedures Order.

34.     Given the ample notice provided by these proposed procedures, any party failing to object to the proposed sale should be deemed to consent to the treatment of its interest under section 363(f)(2) of the Bankruptcy Code and this Procedures Motion. *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent."); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.NJ. 1994) (same); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (same).

14

**D.**     **The Court Should Waive or Reduce the Stay Periods Required By Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.**

35.     The Debtor believes that the closing of the Sale needs to occur as expeditiously as possible. As a result, the Debtor requests that the Court include in the Sale Order a provision waiving the 14-day stay set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure and providing that the sale may be consummated immediately after entry of the Sale Order.  The Sale Order approving the Bidding Procedures should be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

**THE COURT SHOULD APPROVE THE SALE OF THE HOTEL**

**A.**     **Approval of a Sale Transaction Free and Clear of Liens, Claims, Encumbrances and Interests is Appropriate and in the Best Interests of the Estate.**

36.     The Debtor seeks to sell the Hotel to the highest and best bidder following the Auction, free and clear of liens, claims, encumbrances and interests pursuant to Sections 363(b) and (f) of the Bankruptcy Code. If and to the extent a Qualified Bid requires the Debtor to assume and assign any executory contracts or unexpired leases, then the Debtor will also seek to approve the assumption and assignment of any such executory contracts, including the determination of any cure costs in connection therewith, pursuant to Section 365 of the Bankruptcy Code.

37.     Property of the bankruptcy estate may be sold outside the ordinary course of business. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts routinely authorize sales of a debtor's assets if such sale is based upon the sound

business judgment of the debtor. *See Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

38.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

39.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

40.     Furthermore, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code. Indeed, when applying the business judgment standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs.* (*In re First Wellington*

*Canyon Assocs.*), 1989 WL 106838, at *3 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

41.     The true value of the Hotel will be tested through the Auction process pursuant to the Bid Procedures. Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair Auction process—the best means for establishing whether a fair and reasonable price is being paid.

42.     Thus, the Debtor submits that the Bid Procedures and the proposed Auction process will generate the highest and best offer for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. As such, the Debtor's determination to sell the Assets through an Auction process is a valid and sound exercise of the Debtor's business judgment.

**B.     The Sale of the Assets Free and Clear of Claims and Interests is Authorized by Section 363(f) of the Bankruptcy Code.**

43.     The Debtor further submits that it is appropriate to sell the Hotel free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances and interests attaching to the net sale proceeds of the Hotel, as and to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes the Debtor to sell property of the estate free and clear of any liens, claims, encumbrances or interests of an entity if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to

17

accept a money satisfaction of such interest. The language of Section 363(f) is in the disjunctive, so that a sale free and clear can be approved if any of the aforementioned conditions is met. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

44.    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of all liens, claims, encumbrances and interests. *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) of the Bankruptcy Code is met).

45.    This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

46.    The Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code will be satisfied with respect to the sale and transfer of the Hotel. In particular, the Debtor believes that at least section 363(f)(2) of the Bankruptcy Code will be met because each of the parties holding liens on the Hotel, if any, will consent, or absent any objection to this Motion, will be deemed to have consented to, the sale and transfer of the Hotel. Under the Plan, the Holders of Allowed Secured Claims with liens and/or security interests on the Hotel real and personal property shall be paid in full upon the closing of the sale.  Accordingly, section 363(f) of the

Bankruptcy Code authorizes the sale and transfer of the Assets free and clear any such Claims and Interests.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order in substantially the form of the Bid Procedures Order attached as **Exhibit A** hereto (1) approving the Bid Procedures for the sale of the Hotel (attached as Exhibit 1 to the Bid Procedures Order), (2) scheduling the Sale Hearing, (3) approving the form and manner of notices, including the Auction Notice attached as Exhibit 2 to the Bid Procedures Order, and the Cure Notice attached as Exhibit 3 to the Bid Procedures Order, (4) approving the sale of the Hotel free and clear of all liens, claims, encumbrances and interests, (5) approving assumption and assignment procedures, and (6) granting related relief as is proper.

DATED this 25th day of November, 2020.

*/s/ Christopher R. Thompson*
**Eric S. Golden**
Florida Bar No. 146846
Email:  egolden@burr.com
**Christopher R. Thompson**
Florida Bar No. 93102
Email:  crthompson@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL 32801
Phone: (407) 540-6600
Fax: (407) 540-6601
*Attorneys for Debtor*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2020, a true and correct copy of the foregoing was served via CM/ECF upon all parties and their counsel registered to receive notices of electronic filing in this case, and by U.S. First Class, postage prepaid mail to all creditors and parties in interest identified on the Local Rule 1007-2 parties in interest matrix attached hereto.

*/s/ Christopher R. Thompson*
Christopher R. Thompson

Label Matrix for local noticing
113A-6
Case 6:20-bk-03799-KSJ
Middle District of Florida
Orlando
Tue Nov 24 09:49:33 EST 2020

Aimbridge Hospitality
5851 Legacy Circle #400
Plano, TX 75024-5979

Amadeus Hospitality Americas I
29618 Network Place
Chicago, IL 60673-1296

Bank of America, N.A.
c/o Liebler, Gonzalez & Portuondo
44 West Flagler Street, Suite 2500
Miami, Florida 33130-6808

Constrazza International Construction
c/o Keith T. Grumer
KATZ BARROn
100 N.E. Third Ave., #280
Fort Lauderdale, FL 33301-1165

Constrazza International Construction, I
100 N.E. 3rd Ave, Ste 280
Fort Lauderdale, FL 33301-1165

Daytona Hospitality Management
3135 1st Avenue N, Unit 10778
Saint Petersburg, FL 33733-9233

Dormakaba USA Inc.
P. O. Box 896542
Charlotte, NC 28289-6542

Eckert Seamans Cherin Mellott
P. O. Box 643187
Pittsburgh, PA 15264-3187

Ecolab, Inc.
P. O. Box 100512
Pasadena, CA 91189-0512

Florida Department of Revenue
5050 W. Tennessee Street
Tallahassee, FL 32399-0120

G & R Plumbing Enterprises Inc
2545 S Nashville Ave
Orlando, FL 32805-5255

Holiday Hospitality Franchising, Inc.
ATTN: Vice President
Franchise Administration & Licensing
Three Ravinia Dr, Ste 2900
Atlanta, GA 30346-2143

M7 Services LLC
19747 Highway 59 N #340
Humble, TX 77338-3536

M7 Services LLC
654 N SH Pkwy E, Ste 110
Houston, TX 77060-5903

Massey Services Inc.
P. O. Box 547668
Orlando, FL 32854-7668

Ocean Bank
780 NW 42nd Ave Ste 400
Miami, FL 33126-5542

Ocean Bank
c/o Gregory S. Grossman, Esq.
1111 Brickell Ave. Ste 1250
Miami, FL 33131-3123

Ocean Bank
c/o Daniel M Coyle, Esq
1111 Brickell Avenue, Suite 1250
Miami, FL 33131-3123

Onpeak
8313 Collection Center Dr
Chicago, IL 60693-0083

Orange County Comptroller
Tourist Development Tax
P. O. Box 4958
Orlando, FL 32802-4958

Phil Diamond, CPA, as Orange County Comptrol
c/o Michael A. Paasch, Esq.
Mateer & Harbert, P.A.
P O Box 2854
Orlando  FL  32802-2854

Proscape
285 E Oak Ridge Rd
Orlando, FL 32809-4140

RD Pool Maint Inc
2353 N Stewart St
Kissimmee, FL 34746-3046

Royal Cup Inc.
P. O. Box 841000
Dallas, TX 75284-1000

Scott Randolph, Orange County Tax Collector
c/o Michael A. Paasch, Esq.
Mateer & Harbert, P.A.
P O Box 2854
Orlando  FL  32802-2854

Sheraton Lake Buena Vista
12205 Apopka-Vineland Rd
Orlando, FL 32836-6804

Southern Aluminum
P. O. Box 884
Magnolia, AR 71754-0884

Summit Broadband
P. O. Box 10822
Naples, FL 34101-0822

Sunbrite Outdoor Furniture Inc.
610 Irene Street
Orlando, FL 32805-1050

System Tech Services Inc
851 Central Park Dr
Sanford, FL 32771-6602

Team Travel Source
12910 Shelbyville Road Ste 215
Louisville, KY 40243-1594

Visit Orlando
6277 Sea Harbor Dr, Ste 400
Orlando, FL 32821-8043

Waste Connect
1099 Miller Drive
Altamonte Springs, FL 32701-2069

Waste Connections of Florida
Orlando Hauling
1099 Miller Drive
Altamonte Springs, FL 32701-2069

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Gamza, S.A.
Av. Isaac Povoas, 586 - Sala 04
Cuiaba - Mato Grosso - MT
BR 78.005-340

(u)Joao Arcanjo Ribeiro
Av. Isaac Povoas, 586 - Sala 04
Cuiaba - Mato Grosso - MT
BR 78.005-340

(d)Summit Broadband Inc.
P. O. Box 10822
Naples, FL 34101-0822

(u)Universal Towers Investimentos, Ltda
Av. Isaac Povoas, 586 - Sala 04
Cuiaba - Mato Grosso - MT
BR 78.005-340

End of Label Matrix
Mailable recipients    34
Bypassed recipients     4
Total                  38

# Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

UNIVERSAL TOWERS CONSTRUCTION,
INC.,

CASE NO. 6:20-bk-03799-KSJ
Chapter 11

      Debtor.

_____/

### ORDER (1) APPROVING BIDDING PROCEDURES FOR THE SALE OF DEBTOR'S HOTEL PROPERTY, (2) SCHEDULING DATES TO CONDUCT AUCTION AND SALE HEARING, (3) APPROVING THE FORM AND MANNER OF NOTICES, (4) APPROVING THE SALE OF THE HOTEL FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (5) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (6) GRANTING RELATED RELIEF

THIS CASE came before the Court for an expedited hearing on December 1, 2020 at 9:30

a.m., in Orlando, Florida, upon the Debtor's Motion pursuant to 11 U.S.C. §§ 105, 363 and 365,

and Fed. R. Bankr. P. 2002, 6004 and 9014, and Local Rules 2002-1 and 6004-1, for the entry of

an Order (the "*Bid Procedures Order*") (1) approving competitive bidding procedures for the sale of

the Debtor's Hotel real and personal property, (2) scheduling a date for a sale hearing, (3) approving

the form and manner of notices, (4) approving the sale of the Hotel free and clear of all liens, claims,

encumbrances and interests, (5) approving assumption and assignment procedures, and (6) granting related relief (the "*Motion*") (Doc. No. __), filed by Universal Towers Construction, Inc. (the "*Debtor*"). Having reviewed the Motion and the record in this case, having considered the statements of counsel for the Debtor, the parties in interest present at the hearing, the position of the United States Trustee's office, the Court finds that the competitive bidding and sale procedures attached hereto as **Exhibit 1** (the "*Bid Procedures*") in connection with the proposed sale of the Hotel (as defined below) are in the best interests of the Debtor, the Debtor's estate, its creditors, equity holders, and other parties in interest. Accordingly,

THE COURT FINDS AS FOLLOWS:

A.      The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.      The Court has jurisdiction over the Motion and the sale transaction contemplated thereby pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409;

C.      The statutory bases for the relief requested in the Motion are (i) sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "*Bankruptcy Code*"), and (ii) Bankruptcy Rules 2002(a)(2), 6004 and 9014;

D.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances of this case, and no other or further notice is required except as set forth herein with respect to the Sale Hearing (as defined below). A reasonable opportunity to object

or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest;

      E.     The Debtor's proposed notice of the Bid Procedures, substantially in the form attached hereto as **Exhibit 2** (the "*Auction Notice*"), is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of Debtor's interest in the hotel real and personal property located at 7800 Universal Boulevard, Orlando, Florida 32819, doing business as the Crowne Plaza Universal Orlando Hotel (the "*Assets*"), and the Bid Procedures to be employed in connection therewith;

      F.     The Debtor's proposed notice to counterparties to the executory contracts and unexpired leases of the Debtor (the "*Contracts*"), substantially in the form attached hereto as **Exhibit 3** (the "*Cure Notice*") shall, among other things, (i) identify those executory contracts and/or unexpired leases that may be subject to being assumed and assigned by the Debtor in connection with the proposed sale of the Assets hereunder (the "*Designated Contracts*"), (ii) specify the Cure Amounts determined by the Debtor as being necessary to assume and assign such Designated Contracts, and (iii) state that failure to timely object to the proposed assumption and assignment and/or the Cure Amount by the Cure Objection Deadline shall constitute deemed consent to such assumption and assignment and Cure Amount.

      G.     The Cure Notice is appropriate and reasonably calculated to provide all such counterparties with timely and proper notice under the circumstances of this case of the assumption and assignment of the Contracts to the Successful Bidder as well as any Cure Amounts relating thereto;

      H.     The Debtor has articulated good and sufficient reasons for the Court to: (i) approve the Bid Procedures, (ii) approve the manner of notice of the Motion and the Sale Hearing, including

the Sale Notice and the Cure Notice, (iii) set the Objection Deadline (as defined below), and (iv) schedule the Sale Hearing.

I.    The entry of this Bid Procedures Order is in the best interests of the Debtor, its estate, its creditors, equity holders and other parties in interest; and

J.    The Bid Procedures are reasonably designed to maximize the value to be achieved for the Hotel and to achieve the highest and best bid therefor.

K.    Any creditor holding a valid, perfected and non-avoidable lien and security interest on the Assets or any portion thereof shall have the right, as part of a Qualified Bid, to assert a credit bid for such Assets in accordance with Section 363(k) of the Bankruptcy Code, provided however, that nothing herein shall be determinative of the extent, validity and/or priority of any such lien or security interest (the "*Credit Bid*").

Accordingly, it is

ORDERED:

1.    The Motion is GRANTED as set forth herein.

2.    Except as otherwise provided in this Bid Procedures Order, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.    The Bid Procedures attached hereto as Exhibit 1 are hereby incorporated herein and approved in their entirety. The Debtor is authorized to take any and all actions necessary or appropriate to implement and comply with the Bid Procedures.

4.    As further described in the Bid Procedures, the deadline for submitting Stalking Horse Bids for the proposed purchase of the Hotel (the "*Stalking Horse Bid Deadline*") is **February 1, 2021 at 5:00 p.m.** (prevailing Eastern Time). No Bid shall be deemed to be a

Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements of a Qualified Bid as set forth in the Bid Procedures.

5.     The Debtor is authorized to designate a Stalking Horse Bidder and to provide the Break Up Fee in an amount not to exceed 1% of the Stalking Horse Bid amount.

6.     If the Debtor designates a Stalking Horse Bid, or the Debtor designates more than one Qualified Bid and chooses to proceed to the Auction, then the Auctioneer shall conduct the Auction through its online platform within 45 days after the Stalking Horse Bid Deadline.  The Auction shall be conducted in accordance with the Bid Procedures.

7.     If the Auction occurs, the Court shall conduct a hearing on the proposed sale of the Hotel (the "*Sale Hearing*") on **March [17], 2021 at _____ a.m./p.m.** (prevailing Eastern Time); or at such other date and time as counsel and interested parties may be heard by the Court.

8.     Objections, if any, to the relief requested in the Motion in respect of the sale of the Assets, the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, Orlando Division, 400 West Washington Street, Suite 5100, Orlando, FL 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern time) five (5) business days before the Sale Hearing (the "*Sale Objection Deadline*"), and (iv) served upon (a) counsel to the Debtor, and (b) the office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, Tel: (407) 648-6301, Attn: Jill Kelso, Esq., E-mail at jill.kelso@usdoj.gov (collectively, the "*Notice Parties*"), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Orlando, Florida time) on the same day.

9.      The failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Hotel to the Successful Bidder or Immediate Back-Up Bidder, as applicable, and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Hotel, and the assumption or assumption and assignment of the Designated Contracts.

10.     The Sale Notice is hereby approved as being appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Hotel, the Stalking Horse Bid (if any), and the Bid Procedures to be employed in connection therewith.

11.     On or before three (3) business days after entry of this Bid Procedures Order, the Debtor will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Assets or have any known interest in the relief requested by the Motion; (d) the United States Attorney's office for the Middle District of Florida; (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bid Procedures Order; (f) all parties to any litigation involving the Debtor; (g) all counterparties to any executory contract or unexpired lease of the Debtor; (h) all other known creditors and interest holders of the Debtor; and (i) all potential bidders, previously identified or otherwise known to the Debtor.

12.     The Cure Notice is approved as being appropriate and reasonably calculated to provide all such counterparties with timely and proper notice under the circumstances of this case of the assumption and assignment of the Contracts to the Successful Bidder as well as any Cure Amounts relating thereto.

13.     On or before twenty (20) days before the Sale Hearing, the Debtor shall cause the Cure Notice to be served on any and all counterparties to executory contracts and unexpired leases that may be Designated Contracts.

14.     Objections, if any, to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance, conditions to assumption and/or assignment or objections to the Cure Amounts set forth in the Cure Notice, must be (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, Orlando Division, 400 West Washington Street, Suite 5100, Orlando, FL 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern time), within 14 calendar days of the date on which the Cure Notice is served (not counting the day served) (the "*Cure Objection Deadline*"), and (iv) served upon the Notice Parties, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Orlando, Florida time) on the same day.

15.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice shall be binding upon the non-debtor party or parties to the Designated Contract for all purposes in this chapter 11 case and otherwise. All such counterparties to the Designated Contracts shall (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other

amounts with respect to the Designated Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assumption and/or assignment must be satisfied under such Designated Contracts or that there is any objection or defense to the assumption and assignment of such Designated Contracts.

16.    If a non-debtor counterparty to a Designated Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing or such other date subsequent to the Sale Hearing as set by the Court or agreed by the parties.

17.    The Sale Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

18.    If an Auction is conducted, the Qualified Bidder with the highest and best Qualified Bid as determined by the Debtor in the exercise of its reasonable business judgment in consultation with the Consultation Parties will be designated as the successful bidder (the "*Successful Bidder*"). In addition, the Qualified Bidder with the next highest and best Qualified Bid after the Successful Bidder, as determined by the Debtor in the exercise of its reasonable business judgment in consultation with the Consultation Parties, will be designated as the back-up bidder (the "*Back-Up Bidder*").

19.     The Debtor further reserves the right as it may reasonably determine, in good faith, (i) which bidders are Qualified Bidders, (ii) which bids are Qualified Bids, (iii) which Qualified Bid is the Successful Bid and Back-Up Bid as applicable, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the Bid Procedures or the Bankruptcy Code, or (c) contrary to the best interests of the Debtor or the estate, (v) waive any of the terms or conditions contained herein with respect to any or all of the potential bidders, impose additional terms and conditions with respect to all potential bidders, (vi) extend the deadlines set forth herein, (vii) continue or cancel the Auction or the Sale Hearing in open court without further notice, and (viii) modify the Bid Procedures as it may determine to be in the best interest of the estate prior to the Bid Deadline.

20.     The Debtor is authorized to enter into an agreement for an initial stalking horse bid for the Hotel in advance of the Stalking Horse Bid Deadline, which stalking horse bid will be subject to higher and better bids at the Auction (the "*Stalking Horse Agreement*"). The Debtor is authorized, but not required, to provide a break-up fee up to 1% of the Stalking Horse Bid amount in connection with any Stalking Horse Agreement.

21.     The Debtor retains full discretion to reject all Stalking Horse Bids and to cancel the Auction.

22.     The stay provided for in Bankruptcy Rule 6004(h) is hereby waived and this Bid Procedures Order shall be effective immediately upon its entry.

23.     All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bid Procedures Order in accordance with the Motion.

25.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order.

### #

*Attorney Christopher R. Thompson is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service with 3 days of entry of this Order.*

**EXHIBIT 1**

**Bid Procedures**

Set forth below are the competitive bidding and sale procedures (the "**Bid Procedures**") to be employed by Universal Towers Construction, Inc. (the "**Debtor**") in connection with a sale, free and clear of liens, claims, encumbrances and interests, of the Debtor's interests in the hotel real and personal property located at 7800 Universal Boulevard, Orlando, Florida 32819, doing business as the Crowne Plaza Universal Orlando Hotel (the "**Hotel**"). By Order dated December __ 2020 (Doc. No. ___) (the "**Bid Procedures Order**"), these Bid Procedures have been approved by the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**"). The Bid Procedures Order also establishes the procedures for the assumption and assignment of executory contracts and unexpired leases with the Debtor, including without limitation, the Cure Amounts (as defined therein) in connection therewith, and such terms of the Bid Procedures Order are incorporated into these Bid Procedures.

All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Bid Procedures Order.

1. **The Initial Marketing Period**. Fisher Auction Company (as the "**Broker/Auctioneer**") and Avison Young (as the "**Co-Broker**"; and together, the "**Brokers**") will market the Hotel for a period of approximately 60 days, during which time the Brokers will solicit stalking horse bids in the form of an executed Purchase and Sale Agreement (a "**PSA**"). The Debtor has drafted a form of PSA for parties interest in acquiring the Hotel. Broker/Auctioneer will provide a copy of the PSA to all parties who express interest in submitting a Stalking Horse Bid, and will also make such form of PSA available in the electronic data room established pursuant hereto.

At the end of the initial 60-day marketing period, Debtor, in its discretion, may choose to either (i) designate a bidder to become the "**Stalking Horse Bidder**" and enter into a Stalking Horse Agreement as contemplated in Section 2 below; (ii) designate more than one bidder as Qualified Bidders, as described in Section 6 below, to participate in the Auction, and proceed to the Auction without a Stalking Horse Bidder; or (iii) reject all bids and cancel the Auction, in which event the Debtor shall pay to Broker/Auctioneer a "No Sale Fee" of $75,000.00. The 60-day marketing period shall commence upon the Bankruptcy Court's approval of Debtor's Applications to Employ the Broker/Auctioneer and the Co-Broker.

2. **The Stalking Horse Bid**. Debtor seeks to designate a Stalking Horse Bidder, in its sole and absolute discretion, and to provide any Stalking Horse Bidder with a break up fee in the amount of up to one percent (1%) of the Stalking Horse Bid price ("**Break Up Fee**"). The proposed sale to the Stalking Horse Bidder shall be subject to higher or otherwise better offers, if any. All bids submitted during the initial 60-day marketing period shall be considered "**Stalking Horse Bids**." A PSA executed by the Debtor and a Stalking Horse Bidder shall constitute a "**Stalking Horse Agreement**."

3.     **Sale of Hotel "As Is"**.  The Hotel is being sold in its "as is," "where is" and "what is" condition and with all faults, with no guarantees or warranties, express of implied, but shall be free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f).

4.     **Bidder Qualifications**. In order for a Stalking Horse Bid to be considered by the Debtor, each Stalking Horse Bidder must comply with the following requirements (the "**Bidder Qualifications**") no later than **5:00 p.m. prevailing Orlando, Florida time on February 1, 2021** ("**Stalking Horse Bid Deadline**").  In the event of an Auction, to be considered for designations as a Qualified Bidder (as defined below) every bidder must comply with the following Bidder Qualifications no later than **5:00 p.m. prevailing Orlando, Florida time on the day that is three (3) business days before the Auction Date** (the "**Auction Qualification Deadline**").  The Bidder Qualifications are as follows:

- **Good Faith Deposit**:  Every potential bidder must register with the Broker/Auctioneer and provide a deposit (the "**Bidder Deposit**") in an amount of Five Hundred Thousand Dollars ($500,000.00) which shall be delivered to Debtor's title company [Debtor's title company TBD] ("**Escrow Agent**"), via a wire transfer no later than the Bid Deadline.  All Bidder Deposits shall be held in trust by the Escrow Agent for deposits made in connection with the Auction.  The Successful Bidder at the Auction will be required to supplement its Bidder Deposit to equal ten percent (10%) of the Total Purchase Price, as provided in paragraph 9(b) herein below.

- **Form of Stalking Horse Bid**: Each Stalking Horse Bid must include a fully executed PSA that specifically identifies, among other things, the executory contracts and/or unexpired leases (the "**Designated Contracts**") proposed to be assumed and assigned by the Debtor (the effectiveness of such PSA being contingent only upon the bidder becoming the Successful Bidder for the Hotel pursuant to these Bid Procedures and the entry of the Sale Order (as defined below) by the Bankruptcy Court).

- **Corporate Authority**: Each bidder must provide written evidence acceptable to the Debtor in its sole discretion demonstrating the appropriate corporate authorization of the proposed bidder to consummate the purchase of the Hotel.

- **Identification of Bidder and Bidder's Good Faith**: Each Bidder must provide an affidavit under penalty of perjury from a corporate officer of the proposed bidder identifying (i) the corporate structure of the proposed bidder, (ii) the identity of the officers, directors, managers, members and equity holders of the proposed bidder, (iii) disclosing any relationship between any of such parties and the Debtor or any or the Debtor's direct or indirect owners, and (iv) disclosing any relationship between any of such parties and any other interested bidder and its principals. If so requested, the Debtor agrees to keep such information confidential unless such bidder becomes a Successful Bidder or a Back Up Bidder.

- **Proof of Funds**: Each Bidder must provide written evidence that, in the sole and absolute discretion of the Debtor, establishes that the Bidder has the financial

ability to consummate the purchase of the Hotel should such Bidder submit the highest and best bid (such information, "**Proof of Funds**"). The Bidder's financial ability to consummate the transaction shall include evidence related to the initial purchase price as well as any increased purchase price that such Bidder submits in connection with the Auction. If so requested, the Debtor agrees to keep such information confidential, provided however that in the event of a dispute related to such financial wherewithal, the Debtor reserves the right to disclose such financial wherewithal to the Bankruptcy Court in connection with any such dispute.

- **No Conditions or Contingencies**: A Bid may not contain any financing contingencies, due diligence contingencies or conditions, be subject to any internal corporate or other approvals, or be subject to any other conditions or contingencies to the consummation of the transaction for the purchase of the Hotel other than being selected as the Successful Bidder (or Back-Up Bidder) (each as defined below) and the entry of the Sale Order.

- **Irrevocable**: A Bid must be irrevocable through the completion of the Auction, provided that if such Bid is accepted as the Successful Bid or, if applicable, a Back Up Bid (as defined below) at the Auction, then each such Bid shall remain irrevocable as set forth below.

5.    **Total Purchase Price of Successful Bidder to Include Buyer's Premium**.  In addition to its successful bid, the Successful Bidder for the purchase of the Hotel shall pay a "buyer's premium" equal to three percent (3%) of its successful bid (the "**Buyer's Premium**"), to be paid with the successful bid at the closing of the purchase.  The total of the Successful Bid and the Buyer's Premium shall constitute the "**Total Purchase Price**" to be paid by the successful bidder for the purchase of the Hotel.

6.    **Bidder Information and Proof of Funds; Qualified Bidders and Back-up Bidder**. Each bidder shall provide all of his/her/its contact information on the Bidder Pre-Registration Form and the information and items listed in the Instructions for Bidder Qualification, including providing Proof of Funds of their anticipated bidding amount. The provided information and Proof of Funds shall accompany the required Bidder Deposit stated above. The Debtor shall evaluate each bid and bidder, and may then identify a person, persons, entity, or entities from among those who submitted a Bidder Deposit and who otherwise complied with all Bidder Qualifications, and may deem such person(s) "**Qualified Bidders**." By participating in the Auction, each Qualified Bidder consents to its bid being designated as a Back-up Bid in the event its bid is designated as the second highest and best offer to purchase the Hotel (a "**Back-Up Bid**," and the bidder a "**Back-Up Bidder**").  A Qualified Bidder will be evaluated based upon the following factors: (a) the ability to close the sale transaction without delay; and (b) any other factors the Debtor may deem relevant. Debtor reserves the right to make the final determination of who is a Qualified Bidder. Debtor, acting by and through the Broker/Auctioneer, shall notify all Qualified Bidders no later than 5:00 PM prevailing Orlando, Florida time **two (2) business days before the Auction** that they may participate in the Auction.  All Qualified Bidders shall be bound by their bids until the conclusion of the Auction.

7.  **The Auction; Time and Location**. If the Debtor chooses to proceed with the Auction after the initial 60-day marketing period, the Broker/Auctioneer, acting on behalf of the Debtor, will conduct an online-only auction of the Hotel (the "**Auction**"). The Auction will take place online via the Fisher Auction Company Bidding Platform and shall **commence on _____ _____, 2021 at 11:00 AM Eastern Time and end at 1:00 PM Eastern Time.** Only Qualified Bidders (including any Stalking Horse Bidder) will be entitled to participate in the Online Auction.

8.  **Bidding**. The Auction shall be conducted as an online auction. Auction bids must exceed any Stalking Horse Bid plus the amount of the Break Up Fee (the "**Initial Overbid**"). After the Initial Overbid, bids by Qualified Bidders may be increased in increments determined by the Broker/Auctioneer in its reasonable discretion.

9.  **Successful Bid**.

(a)  The Auction shall conclude when Debtor receives what is determined by the Debtor, acting in consultation with the Broker/Auctioneer, to be the highest and best offer for the Hotel (the "**Successful Bid**," and the bidder submitting it, the "**Successful Bidder**") and subject only to the subsequent approval of the Bankruptcy Court. Debtor shall (i) determine which bid of any Qualified Bidders constitutes the highest and best bid for the Hotel based on, among other things, the form of consideration being offered, the likelihood of the bidder's ability to close the transaction and the timing of the closing of the sale, (ii) report its determination to the Court, and (iii) request that the Court approve the designated high bidder's bid and authorize the sale of the Hotel to it. Debtor shall also designate the Back-Up Bidder.

(b)  Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall execute a PSA. In addition, the Successful Bidder shall supplement its Bidder Deposit by an additional amount such that the total deposit (the "**Deposit**") equals not less than ten percent (10%) of the Total Purchase Price (*see* paragraph 4 hereinabove). The supplemental amount shall be provided by Federal Wire Transfer to the trust account of the Escrow Agent. The Back-Up Bidder shall also be required to execute a PSA in the amount of its highest bid as is further provided in paragraph 12 below.

10.  **The Sale Hearing**. A hearing on the Sale Motion (the "Sale Hearing") will be scheduled before the United States Bankruptcy Court, for the Middle District of Florida- Orlando Division on March __, 2021 at _____. At that time, the Debtor will report to the Court on the bidding for the Hotel and the Debtor's determination of the highest and best offer to purchase the Hotel. The Court will rule on the Sale Motion and any sale issues and determine the successful purchaser of the Hotel.

11.  **The Sale Order**. The "**Sale Order**" means an order of the Bankruptcy Court, in form and substance acceptable to the Successful Bidder in its reasonable discretion, subject to the Bankruptcy Court's approval, that, among other things, (a) authorizes the sale of the Hotel to the Successful Bidder free and clear of all Liens, claims, encumbrances and other interests pursuant to 11 U.S.C. §§ 363(b) and 363(f), and providing that any such Liens and claims shall attach to the sale proceeds of the Hotel; and (b) finds and provides (based upon evidence presented to the Bankruptcy Court) that (i) the Successful Bidder has acted in "good faith" within the meaning of

11 U.S.C. § 363(m), and is entitled to the protections thereunder, (ii) the sale was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, (iii) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to the sale of the Hotel or the Successful Bidder's PSA, or any breach hereof, and (iv) the terms of the PSA and the transaction contemplated thereby may be specifically enforced against and are binding upon, and not subject to rejection or avoidance by, the Debtor. The Sale Order shall further provide that the Successful Bidder is not a successor to the business of the Debtor; that the Successful Bid represents a fair market value of the Hotel; that the Successful Bidder shall have no liability for any obligations of the Debtor, other than the purchase price; and that the automatic stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedures shall not apply to the Sale Order.

12.    **Back-Up Bidder**. If the Successful Bidder fails to consummate its purchase of the Hotel by the required closing date because of a breach or failure to perform on the part of such Successful Bidder, the Successful Bidder shall forfeit its Deposit to the Debtor and the next highest or otherwise best qualified bid for the Hotel will be deemed to be the Successful Bid, as the Back-Up Bidder, and the Debtor will be authorized to consummate the sale with the Back-Up Bidder without further order of the Court. The closing of the sale to an Back-up Bidder shall take place within ten (10) days after the Back-Up Bidder receives notice from the Debtor that the Successful Bidder failed to close, and that the Debtor has elected to proceed to close with the Back-Up Bidder. If the Back-Up Bidder is unable or unwilling to close the sale in the time permitted, the Back-Up Bidder shall forfeit its Bidder Deposit to the Debtor.

13.    **Return of Deposits**. Each Bidder Deposit and Deposit shall be maintained in a non-interest bearing account and subject to the jurisdiction of the Bankruptcy Court. Within five (5) business days after the entry of the Sale Order, the Debtor shall return all Bidder Deposits to all Qualified Bidders except (a) the Bidder Deposit submitted by the Successful Bidder, supplemented to become the Deposit, shall be applied by the Debtor against the purchase price at the closing of the sale to the Successful Bidder (or forfeited to the Debtor if the Successful Bidder defaults under its PSA and fails to close its purchase), and (b) the Bidder Deposit submitted by the Back-Up Bidder. In the event that the Successful Bidder closes the sale, the Debtor shall return to the Back-Up Bidder its Bidder Deposit within five (5) business days after the closing. In the event the Back-Up Bidder closes on the purchase of the Hotel, its Bidder Deposit shall be applied by the Debtor against the Back-Up Bidder's purchase price.

14.    **Modifications to Bid Procedures**. The Debtor shall have the right to impose, at or before the Auction, additional terms and conditions on the sale of the Hotel, to extend or adjourn any deadlines set forth in these Bid Procedures, and to take any other actions with respect to the Auction, the Bid Procedures or the sale of the Hotel which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value of the Hotel and which are not inconsistent with these Bid Procedures, the Successful Bidder's PSA, or any order of the Bankruptcy Court.  For any additional or modified terms which are material in effect upon the sale, Debtor shall present such terms to the Court and explain the reasons for them at the Sale Hearing.

15.    **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale, the Bid Procedures, the Purchase and Sale Agreement, the Auction, and/or any other matter that in any way relates to the foregoing. Any

party disputing the sale, the Bid Procedures, the Purchase and Sale Agreement, the Auction and/or any other matter that in any way relates to the foregoing shall file an objection with the Court as soon as practicable to facilitate resolution of the objection.

16.    **Miscellaneous.**  All Qualified Bidders shall be deemed to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the sale of the Hotel. All purchase and sale agreements shall be governed by and construed in accordance with the laws of the State of Florida.

17.    **Data Room**.  Broker/Auctioneer will maintain an electronic data room with all due diligence materials pertinent to the Sale of the Hotel.  Bidders may contact Lamar Fisher (lamar@fisherauction.com) or Patricia McGrath (patricia@fisherauction.com) to request access to the data room.  All bidders shall be required to execute a confidentiality and non-disclosure agreement prior to being granted access to the data room.

**<u>EXHIBIT 2</u>**

[Auction Notice]

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

UNIVERSAL TOWERS CONSTRUCTION,            CASE NO. 6:20-bk-03799-KSJ
INC.,                                     Chapter 11

      Debtor.

_____/

## <u>NOTICE OF AUCTION AND SALE HEARING</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On November 25, 2020, Universal Towers Construction, Inc. (the "***Debtor***"), filed a Motion for entry of an order (the "***Bid Procedures Order***"), among other things, (a) approving certain competitive bidding and sale procedures (the "***Bid Procedures***") for the sale of the Debtor's interest in the hotel real and personal property located at 7800 Universal Boulevard, Orlando, Florida 32819 (the "***Hotel***"); (b) approving the form and manner of notice of the auction of the Hotel and the Sale Hearing; and (c) scheduling a sale hearing (the "***Sale Hearing***") to consider the sale of the Hotel, (d) setting objection and bidding deadlines with respect to the sale of the Hotel and (e) establishing procedures for the assumption and assignment of executory contracts and unexpired leases with the Debtor. The Motion additionally requests entry of an order (the "***Sale Order***") approving (i) the sale of the Hotel free and clear of liens, claims, encumbrances and interests, except as set forth in the Bid Procedures Order; (ii) the assumption and assignment of executory contracts and unexpired leases with the Debtor, and (iii) certain related relief.

2.      On December ___, 2020, the United States Bankruptcy Court for the Middle District of Florida entered the Bid Procedures Order (Doc. No. __). Pursuant to the Bid Procedures, the Auction for the Hotel shall take place on **March __, 2021, at 11:00 a.m**. (prevailing Eastern Time) virtually through an online platform hosted by Fisher Auction Company ("***Auctioneer***"). Only parties that complied with the Bidder Qualifications, in accordance with the Bid Procedures, by no later than **5:00 p.m**. (Eastern Time) three business days before the Auction (the "***Auction Qualification Deadline***") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Hotel must submit its Bidder Qualifications prior to the Auction Qualification Deadline and in accordance with the Bid Procedures. Parties interested in receiving information regarding the sale of the Hotel should contact undersigned counsel, Lamar Fisher (lamar@fisherauction.com), and Patricia McGrath (patricia@fisherauction.com).

3.      Debtor [has/has not] designated a Stalking Horse Bid and a Stalking Horse Bidder at the Auction. [Details re Stalking Horse Bid to be provided.]

4.      The Sale Hearing to consider approval of the sale of the Hotel and the assumption and assignment of the Potential Assumed and Assigned Contracts to the Successful Bidder free and clear of all liens, claims, encumbrances and interests will be held before the Honorable Karen S. Jennemann, United States Bankruptcy Court, 400 W. Washington St., Courtroom A (6th Floor), Orlando, FL 32801 on **March [17], 2021 at ____ a.m./p.m.** (prevailing Eastern Time), or at such earlier date as counsel may be heard. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

5.      Objections, if any, to the relief requested in the Motion in respect of the sale of the Hotel, the determination of which Qualified Bid is the Successful Bid, or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, Orlando Division, 400 West Washington Street, Suite 5100, Orlando, FL 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern time) one business day before the Sale Hearing (the "**_Sale Objection Deadline_**"), and (iv) served upon (a) counsel to the Debtor, Burr & Forman, LLP, 200 S. Orange Ave., Suite 800, Orlando, Florida 32801, Attn: Eric. S. Golden, Esq., Email egolden@burr.com and Christopher R. Thompson, Esq., Email at crthompson@burr.com; and (b) the office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, Tel: (407) 648-6301, Attn: Audrey M. Aleskovsky, Esq., E-mail at audrey.m.aleskovsky@usdoj.gov (collectively, the "Notice Parties"), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Orlando, Florida time) on the same day.

6.      The failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Hotel to the Successful Bidder or Back-Up Bidder, as applicable, and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Hotel, and the assumption or assumption and assignment of the Potential Assumed and Assigned Contracts.

7.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bid Procedures Order, and the Bid Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety. Copies of the Motion, the Bid Procedures, and/or the Bid Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Burr & Forman, LLP, 200 S. Orange Ave., Suite 800, Orlando, Florida 32801, 407-540-6600, Attn: Eric. S. Golden, Esq., Email egolden@burr.com and Christopher R. Thompson, Esq., Email at crthompson@burr.com. In addition, copies of the aforementioned pleadings may be found on the Pacer website, http://ecf.flmb.uscourts.gov.

Respectfully submitted on February ___, 2021.

*/s/ Christopher R. Thompson*

**Eric S. Golden**
Florida Bar No. 146846
Email: egolden@burr.com
**Christopher R. Thompson**
Florida Bar No. 93102
Email: crthompson@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL 32801
Phone: (407) 540-6600
Fax: (407) 540-6601
*Attorneys for Debtor*

## **EXHIBIT 3**

[Cure Notice]

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

UNIVERSAL TOWERS CONSTRUCTION,
INC.,

CASE NO. 6:20-bk-03799-KSJ
Chapter 11

      Debtor.

_____/

**NOTICE OF DEBTOR'S INTENT TO ASSUME AND ASSIGN
CERTAIN UNEXPIRED LEASES AND EXECUTORY
CONTRACTS AND SETTING FORTH THE CURE AMOUNTS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On November 25, 2020, Universal Towers Construction, Inc. (the "***Debtor***"), filed a Motion for entry of an order (the "***Bid Procedures Order***"), among other things, (a) approving certain competitive bidding and sale procedures (the "***Bid Procedures***") for the sale of the Debtor's interest in the hotel real and personal property located at 7800 Universal Boulevard, Orlando, Florida 32819 (the "***Hotel***"); (b) approving the form and manner of notice of the auction of the Hotel and the Sale Hearing; and (c) scheduling a sale hearing (the "***Sale Hearing***") to consider the sale of the Hotel, (d) setting objection and bidding deadlines with respect to the sale of the Hotel and (e) establishing procedures for the assumption and assignment of executory contracts and unexpired leases with the Debtor. The Motion additionally requests entry of an order (the "***Sale Order***") approving (i) the sale of the Hotel free and clear of liens, claims, encumbrances and interests, except as set forth in the Bid Procedures Order; (ii) the assumption and assignment of executory contracts and unexpired leases with the Debtor, and (iii) certain related relief.

2.      On December ___, 2020, the United States Bankruptcy Court for the Middle District of Florida entered the Bid Procedures Order (Doc. No. __). Pursuant to the Bid Procedures, the Auction for the Hotel shall take place on **March __, 2021, at 11:00 a.m.** (prevailing Eastern Time) virtually through an online platform hosted by Fisher Auction Company. The Sale Hearing to consider approval of the sale of the Hotel and the assumption and assignment of the Designated Contracts to the Successful Bidder free and clear of all liens, claims, encumbrances and interests will be held before the Honorable Karen S. Jennemann, United States Bankruptcy Court, 400 W. Washington St., Courtroom A (6th Floor), Orlando, FL 32801 on **March [17], 2021 at _____ a.m./p.m.** (prevailing Eastern Time), or at such earlier date as counsel may be heard. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

3.      The Debtor is a party to various executory contracts and unexpired leases (collectively, the "***Contracts***") and, pursuant to the Bid Procedures Order, the Debtor may assume

or assume and assign certain of such Contracts to the Successful Bidder or Back-Up Bidder, as applicable (collectively, the "***Designated Contracts***").

4.      You have been identified as a counterparty to a Designated Contract. The Designated Contract with respect to which you have been identified as a counterparty, and the corresponding proposed cure amount (the "***Cure Amount***") are set forth on **Schedule 1** annexed hereto.

5.      The Debtor believes that any and all defaults (other than the filing of this chapter 11 case) and actual pecuniary losses under the Designated Contracts can be cured by the payment of the Cure Amount.

6.      The assumption and assignment of any Designated Contract shall result in the full release and satisfaction of any claims or defaults relating to the Designated Contract, whether monetary or non-monetary.

7.      Objections, if any, to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance, conditions to assumption and/or assignment or objections to the Cure Amounts set forth in the Cure Notice, must be (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, Orlando Division, 400 West Washington Street, Suite 5100, Orlando, FL 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern time), within 14 calendar days of the date on which this Cure Notice is served (not counting the day served) (the "***Cure Objection Deadline***"), and (iv) served upon (a) counsel to the Debtor, Burr & Forman, LLP, 200 S. Orange Ave., Suite 800, Orlando, Florida 32801, 407-540-6600, Attn: Eric S. Golden, Esq., Email egolden@burr.com and Christopher R. Thompson, Esq., Email crthompson@burr.com; and (b) the office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, Tel: (407) 648-6301, Attn: Jill Kelso, Esq., Email at jill.kelso@usdoj.gov (collectively, the "Notice Parties"), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Orlando, Florida time) on the same day.

8.      Any counterparty to a Designated Contract that fails to timely file an objection to a Cure Amount or the proposed assumption and assignment of a Designated Contract shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtor, the Debtor's estate or the Successful Bidder or Back-Up Bidder, as applicable, with respect to its Contract, and will be deemed to have consented to the sale of the Hotel and the assumption and assignment of its Contract in connection therewith. In addition, all such counterparties to the Designated Contracts shall be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assumption and/or assignment must be satisfied under such Designated Contracts or that there is any objection or defense to the assumption and assignment of such Designated Contracts.

9.      Where a counterparty to a Designated Contract files a timely objection asserting a higher cure amount than the Cure Amount, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under Bankruptcy Code section 365 with

respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by the Bankruptcy Court. All other objections to the proposed assumption or assumption and assignment of the Potential Assumed and Assigned Contracts will be heard at the Sale Hearing.

10.    If no Cure Amount is due under the Designated Contract, or the counterparty to such agreement does not otherwise object to the assumption and assignment of such agreement, no further action needs to be taken on the part of that counterparty.

11.    The Debtor's decision to assume and assign the Designated Contracts is subject to Bankruptcy Court approval and consummation of the Sale. Absent consummation of the Sale, each Designated Contract shall not be deemed assumed and assigned and shall in all respects be subject to further administration under the Bankruptcy Code. The designation of any agreement as a Designated Contract shall not constitute or be deemed to be a determination or admission by the Debtor or the Proposed Purchaser that such document is, in fact, an executory Contract or unexpired Lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

12.    The Debtor or the Successful Bidder (or Back-Up Bidder, as applicable) reserves the right to remove any Designated Contract set forth on **Schedule 1** hereto at any time and for any reason prior to the Sale Hearing by filing a Supplemental Cure Notice. To the extent any Designated Contract is removed from **Schedule 1** hereto, the Debtor shall have no obligation to assume or assume and assign that Contract.

Respectfully submitted on February ___, 2021.

/s/ Christopher R. Thompson
**Eric S. Golden**
Florida Bar No. 146846
Email:  egolden@burr.com
**Christopher R. Thompson**
Florida Bar No. 93102
Email:  crthompson@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, FL 32801
Phone: (407) 540-6600
Fax: (407) 540-6601
*Attorneys for Debtor*