ORDERED.

Dated: December 07, 2020

_Karen S. Jennemann_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

UNIVERSAL TOWERS CONSTRUCTION, INC.,

CASE NO. 6:20-bk-03799
Chapter 11

Debtor.
_____/

### ORDER APPROVING DEBTOR'S EXPEDITED APPLICATION TO EMPLOY OF FISHER AUCTION COMPANY AS AUCTIONEER AND CO-REAL ESTATE BROKER TO THE DEBTOR

THIS CASE came on for an expedited hearing held on December 1, 2020 at 9:30 a.m. for consideration of the *Debtor's Expedited Application to Employ Fisher Auction Company as Auctioneer and Co-Real Estate Broker to the Debtor*, and the *Declaration of Lamar Fisher* submitted in support thereof (collectively, the "Application"), filed on November 25, 2020 (Doc. No. 196). The Court, having reviewed the Application, noting the modifications to the Listing Agreement attached to the Application announced in open Court by Debtor's counsel, which modifications have been incorporated into the *Exclusive Real Estate Sale/Listing Contract for Sale*

43892258 v2

*of Commercial Real Property* attached hereto as **Exhibit A** (the "Revised Listing Agreement"), and noting no objections to the Application, as modified, it is:

**ORDERED**:

1. The Application is APPROVED as modified in open Court and as set forth herein.

2. The Debtor, in accordance with § 327 of the Bankruptcy Code, is authorized to employ Fisher Auction Company ("Fisher") as its auctioneer and co-real estate broker pursuant to the terms of the Revised Listing Agreement with compensation to be paid in such amounts as may be allowed by the Court upon proper application in accordance with 11 U.S.C. §§ 330 and 331.

3. All compensation to Fisher shall be upon proper application to this Court in accordance with 11 U.S.C. §§ 330 and 331, with copies served on the Debtor, the United States Trustee, and such other parties-in-interest as the Court may direct, and paid in such amounts as may be allowed by the Court.

*Attorney Christopher R. Thompson is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service with 3 days of entry of this Order.*

43892258 v2

2

# Exhibit A

# EXCLUSIVE REAL ESTATE SALE / LISTING CONTRACT
## FOR SALE OF COMMERCIAL REAL PROPERTY

**Contract Date:** _____

**Seller:** Universal Towers Construction, Inc., a Florida Corporation - Debtor in the U.S. Bankruptcy Court for the Middle District of Florida – Orlando Division - Chapter 11, Case No.: 6:20-bk-03799-KSJ

**Address:** c/o Christopher R. Thompson of Burr & Forman LLP, 200 South Orange Avenue, Suite 800, Orlando, Florida 32801

**Telephone:** 407.540.6652    **Facsimile:** 407.540.6601    **E-mail:** crthompson@burr.com

**BROKER (AUCTIONEER):** Fisher Auction Company
2112 East Atlantic Boulevard
Pompano Beach, FL 33062-5208
Tel: 954.942.0917 • Fax: 954.782.8143
Email: info@fisherauction.com

**CO-BROKER:** D&C Hospitality Investments,
a Colorado Limited Liability Company,
d/b/a HREC Investment Advisors
7512 Dr. Phillips Boulevard
Suite 50-904
Orlando, Florida 32819
Tel: 407.963.4840
Email: psexton@hrec.com

**PROPERTY:**

**Property Description:** Crowne Plaza Orlando: a 15 story hotel consisting of 400 guest rooms with banquet/ballroom/meeting space, a fitness center and swimming pool.

**Street Address:** 7800 Universal Boulevard, Orlando, Florida 32819

**Legal Description:** Lot 2, FLORIDA CENTER, UNIT 16, according to the plat thereof as recorded in Plat Book 5, Pages 141 through 145, Public Records of Orange County, Florida.

**Sale Date:** Day: TBD    Date: TBD    Time: 11:00 AM ET to 1:00 PM ET

**2020 Real Estate Taxes:** $606,809.80
ID: 25-23-28-2795-00-020
Tax Assessed Value $30,481,443.00

**Promotional Funds:** Not to exceed $30,000.00. Within five (5) calendar days of Contract execution by all parties, Broker and Co-Broker will provide Seller with the detailed line by line marketing campaign budget for Seller's final approval. The approved marketing campaign funds to be advanced to Broker and Co-Broker within ten (10) calendar days from Court appointment. At closing, Broker and Co-Broker will reimburse the Seller the advanced marketing funds from their earned real estate commissions.

**Special Considerations:** 1) All terms of sale will be defined in the Court approved Bidding

> Procedures-Terms and Conditions of Sale including but not limited to Bidders Financial Qualifications, Required Documents and Closing Schedule.
> 2) The Immediate Back-Up Bidder shall remain intact until the successful Buyer completes their transaction. In the event of a default, they shall be required to perform under their transaction.
> 3) Seller shall be responsible for any back real estate taxes due at closing.
> 4) The marketing of the Property will be presented as a "U.S. Bankruptcy Court Sale".

Seller, Broker and Co-Broker covenant and agree as follows:

**1. LISTING:**

(a) Seller hereby grants to Broker and Co-Broker an Exclusive Right of Sale for one hundred twenty (120) calendar days from their Court Appointment on the Property identified above, and Seller authorizes Broker and Co-Broker to secure an acceptable "Stalking Horse" offer, or multiple qualifying bids, and then sell said Property via a stand-alone online U.S. Bankrtupcy Court Auction ("Auction"), hereafter referred to as the "Sale". In the event a Stalking Horse is not secured, the Property will be sold to the highest and best bidder with the highest bid being subject to the Seller's approval and the Court's final approval and acceptance of price. (See Section 9 below as an exception).

(b) This Contract shall be automatically extended for an additional forty five (45) calendar days after the Sale to complete the procurement of a qualified buyer and close the sale during the post Sale/contract process, if necessary.

(c) Broker's and Co-Broker's authority under this Contract shall be limited strictly to the promotion of the Property covered hereby; under no circumstances whatsoever shall Broker and Co-Broker be authorized to make any representation or warranty on behalf of Seller except as is consistent with the Court Order to sell said Property, or to bind Seller to any sales agreement or other contract.

**2. TITLE:**

(a) Seller represents that either fee simple title to the Property is marketable and insurable as of the date of this Agreement or shall take all necessary steps to deliver marketable and insurable title at closing of the Sale and free and clear of all liens and monetary encumbrances through the Bankruptcy Court's Chapter 363 sales process. Fee simple title will be transferred via a Quit Claim Deed and/or Bankruptcy Court Order. Seller shall have the right to provide Buyer, through its selected Escrow Agent-Settlement Agent, a title commitment and owner's policy at the Buyer's expense. Said expense will be at promulgated rate.

(b) Seller has full power and authority to enter into this Contract and convey title free and clear of all liens subject to Bankruptcy Court approval.

(c) There are no other outstanding listing contracts on the Property.

**3. DISCLOSURE OF KNOWN DEFECTS:**

Seller acknowledges the seller of real property has the obligation under law to disclose any defects that affect the value of a property to any prospective purchaser of seller's property, and as a result, Seller represents and warrants that Seller is not aware of any facts or defects affecting the value of the Property.

**4. GUARANTEES:**

(a) Seller acknowledges Broker and Co-Broker have not made any commitments as to price the Property will bring at the Sale, nor does Broker and Co-Broker guarantee the sale of any property subject to this Contract.

Initials

(b) Seller is entering into this Contract in reliance on Broker's and Co-Broker's special and unique abilities with respect to the sale of real property. Broker and Co-Broker represent, warrant, and agree, they shall diligently and in good faith: (i) promote the Property and the Sale, (ii) prepare promotional materials, instructions, and releases for the Sale consistent with this Contract and consistent with Seller's representations, (iii) provide forms to be used with respect to the Sale, (iv) provide reasonable services to respond to inquiries about the Property and the Sale, (v) organize and conduct the Sale, (vi) provide personnel to supervise the Court approved Purchase and Sale Agreement execution after the Sale, provided an authorized agent of Seller will actually sign the Purchase and Sale Agreement and related documents, and (vii) perform other services incident to the holding of the Sale, consistent with this Contract.

(c) The Property is being sold in its "As Is, Where Is" condition with all faults and defects, with no representations, guarantees or warranties express or implied.

**5. COMMISSIONS / FEES:**

(a) A three percent (3%) Buyer's Premium will be added to the final bid price and it will be included in the total contract price.

The Buyer's Premium will be divided as follows:

<u>If there is a Broker representing the Buyer:</u>

Broker to receive one percent (1%) of the final bid price as their earned real estate commission.

Co-Broker to receive one percent (1%) of the final bid price as their earned real estate commission.

Buyer's Broker to receive one percent (1%) of the final bid price as their earned real estate commission.

<u>If only Broker & Co-Broker complete the sale of the Property:</u>

Broker and Co-Broker to each receive one and one-half percent (1.5%) of the final bid price as their earned real estate commission.

If Co-Broker becomes a Buyer's Broker, Broker and Co-Broker to each receive one and one-half percent (1.5%) of the final bid price as their earned real estate commission.

(b) Seller is obligated to pay for the marketing campaign funds incurred for the Sale, as indicated above in the Promotional Funds Adavnced.

**6. CONDITIONS:**

(a) Seller agrees when executed by Seller, Broker and Co-Broker, and approved by the Bankruptcy Court, this Contract shall be binding on all parties, their heirs, personal representatives and assigns.
(b) Seller authorizes its designated Escrow Agent-Settlement Agent to accept and hold escrow deposits in escrow pending closing on all offers to purchase sale contracts.
(c) If any escrow deposit made by the Buyer shall be forfeited, Seller shall be entitled to all such escrow deposit funds.
(d) Seller shall cooperate with Broker and Co-Broker in good faith in carrying out the purpose of this Contract.
(e) This Contract represents the full and final agreement between the parties. Representations or warranties not incorporated herein are not valid or enforceable. Statements or representations contained in any advertising material do not constitute additions or amendments to the terms of this

Initials

Contract.

(f) Broker and Co-Broker will rely on the accuracy of information provided to it by the Seller, even where said information is incorporated into the promotional materials. The Seller remains responsible for the accuracy of all such information and shall immediately inform Broker and Co-Broker of any and all material facts that arise after the execution of this Contract. Seller shall sign off on all promotional materials before any placement occurs.

(g) In the event of any inconsistency between the terms and provisions of this Contract and the terms and provisions of the Court approved Purchase and Sale Agreement as it relates to the obligations of the parties hereto to one another, the terms and provisions of any court order shall govern and control the rights and obligations of the parties.

(h) This Contract may be executed in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

(i) If any provision of this Contract, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of the Contract, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

(j) **This agreement is subject to the approval of the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, which the Seller will promptly seek.**

7. **FORCE MAJEURE**

Broker and Co-Broker shall have no liability by reason of any delay or failure to perform any obligation if the delay or failure to perform is a result of force majeure or anything that is beyond the Broker's and Co-Broker's control, including, but not limited to, Acts of God (including fire, flood, earthquake, storm, hurricane or other natural disaster), war, invasion, act of foreign enemies, hostilities, terrorist activities, acts of Government, embargo, power outage or other cause of nature beyond their control.

8. **GOVERNING LAW/JURISDICTION/VENUE**

This Contract shall be construed, enforced and governed by the laws of the State of Florida, without regard to choice of law and similar doctrines. Any legal suit, action or proceeding arising out of or relating to this Contract may only be instituted in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

9. **SALE METHODOLOGY:**

Broker and Co-Broker shall conduct the Sale on the terms stated below:

**STEP ONE:**

Broker and Co-Broker shall market the Property for up to a sixty (60) calendar day timeframe from issuance of Court order to secure an acceptable "As-Is, Where-Is", No Contingency, Purchase and Sale Agreement; with a 10% hard Escrow Deposit; a Court approved break-up fee (paid only if the Stalking Horse is not the successful Buyer after Step Two); and a three percent (3%) commission paid by the Buyer also referred to as Buyer's Premium. At the end of the sixty (60) calendar days, if Seller has not identified and designated a Stalking Horse Agreement, or if the Seller has not designated more than one "Qualified Bidders" to participate in Step Two, which Seller may designate in its sole discretion, then the sale process will not contintue to Step Two.

**SPECIAL NOTE:** Seller has the right not to move forward to Step Two. Seller shall notify Broker of its decision in writing upon the expiration of the timeframe specified in Step One. If Seller does not move forward to Step Two, Seller shall compensate Broker a $75,000.00 no-sale fee plus marketing costs payable within twenty (20) calendar days from Broker's receipt of written notification from Seller. Once the no-sale fee and marketing costs are received from Seller by Broker, this Contract shall become null and void and all parties are released from all obligations

Initials

thereafter.

### STEP TWO:

At the later of the sixtieth (60th) calendar day after Step One commences or on the date the Stalking Horse Agreement is executed by the Seller, or the date that Seller identifies more than one Qualified Bidder based on the bid contracts received, Broker and Co-Broker shall advertise and conduct the Sale within forty-five (45) calendar days. The Property shall be offered at the Auction to the highest and best bidder above (a) the Stalking Horse bid amount, plus a bidding incremental amount set by Seller in order to compensate for the approved break-up fee and any additional costs; or (b) in the event no Stalking Horse is identified but multiple Qualified Bidders have been designated, at an amount to be established by the Seller in its sole discretion.

**NOTE:** The winning bid will be subject to the Court's approval via a Sale Confirmation Hearing.

10. **WAIVER OF JURY TRIAL.**

AS INDUCEMENT FOR BROKER AND CO-BROKER TO ENTER INTO THIS CONTRACT AND IN CONSIDERATION THEREOF, BROKER, CO-BROKER AND SELLER AGREE THAT, IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, OR BY VIRTUE OF THE TERMS OF THIS CONTRACT, BROKER, CO-BROKER AND SELLER SHALL, AND DO HEREBY, ABSOLUTELY AND CONDITIONALLY WAIVE TRIAL BY JURY.

<u>REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.</u>

Initials

Facsimile and electronic signatures of the parties to this Contract shall be treated as original signatures.

**ACCEPTANCE BY THE UNDERSIGNED:**

**SELLER:** Universal Towers Construction, Inc., a Florida Corporation

By: _/s/ Lis Sommerville_
Lis Rejane Oliveira-Sommerville
Its President

_____
Witness

**BROKER (AUCTIONEER):** Fisher Auction Company

By: _/s/ Lamar P. Fisher_
Lamar P. Fisher
Its President/CEO

_____
Witness

**CO-BROKER:** D&C Hospitality Investments, a Colorado Limited Liability Company, d/b/a HREC Investment Advisors

By: _____
Paul Sexton
Its: Senior Vice President

_____
Witness

Initials

Facsimile and electronic signatures of the parties to this Contract shall be treated as original signatures.

**ACCEPTANCE BY THE UNDERSIGNED:**

**SELLER:** Universal Towers Construction, Inc., a Florida Corporation

By: *[signed]* Lis Sommerville
Lis Rejane Oliveira-Sommerville
Its President

_____
Witness

**BROKER (AUCTIONEER):** Fisher Auction Company

By: _____
Lamar P. Fisher
Its President/CEO

_____
Witness

**CO-BROKER:** D&C Hospitality Investments, a Colorado Limited Liability Company, d/b/a HREC Investment Advisors

By: *[signed]*
Paul Sexton
Its: Senior Vice President

_____
Witness

Initials: *[initialed]*